UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

| | |
|---|---|
| ANDREA BROWN, | ) CV 07-02453-SH |
| | ) |
| Plaintiff, | ) MEMORANDUM DECISION |
| | ) |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, Commissioner Social Security Administration, | ) |
| | ) |
| Defendant, | ) |
| | ) |

This matter is before the Court for review of the Decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. § 636(c), the parties have consented that the case may be handled by the undersigned. The action arises under 42 U.S.C. § 405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. Plaintiff and Defendant have filed their pleadings, Defendant has filed the certified transcript of record, and the parties have

1

filed a Joint Stipulation. After review of the matter, the Court concludes that the decision of the Commissioner should be reversed and the matter remanded.

On January 10, 2005, Plaintiff Andrea Brown filed applications for a period of disability, disability insurance benefits and Supplemental Security Income benefits, alleging an inability to work since April 9, 2004, due to a status post left knee meniscal tear repair. (Administrative Record ["AR"] 57-64). The claim was initially denied, and a hearing took place before the Administrative Law Judge (ALJ) on April 5, 2006. On May 9, 2006, additional medical records regarding Plaintiff's second surgery were submitted. On May 23, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform her past relevant work as an usher/ticket taker. (AR 26).

Plaintiff makes two challenges to the ALJ's determination. Plaintiff alleges that the ALJ erred (1) by not properly evaluating the medical evidence of the record and (2) by not properly evaluating Plaintiff's subjective complaints. Each of Plaintiff's contentions will be addressed in turn.

**ISSUE NO. 1: The ALJ's Evaluation of the Medical Evidence of the Record**

The Social Security Act ("Act") provides that an individual should be considered disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted, or can be expected to last, for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A).

Plaintiff was injured on April 9, 2004, when she slipped in a water pool at work. (AR 135). She underwent left knee surgery on November 9, 2004 and had a second surgery of the left knee on September 22, 2005. During these surgeries and recovery, Plaintiff was under the care of Dr. Perelman. Plaintiff asserts that there is no substantial medical or vocational evidence in the record to

support the legal conclusion that Plaintiff is not disabled within the meaning of the Act. (Compl. ¶ 9.) More specifically, Plaintiff asserts that the ALJ erred in not giving deference to the treating physician's (Dr. Ronald Perelman) opinions.

On April 5, 2005[1], prior to Plaintiff's second surgery, Dr. Frederick Workmon performed an orthopaedic examination of Plaintiff. The exam results showed that Plaintiff could squat only 60% of normal, complained of pain in the left hip and left knee, and discomfort in the back area. There was mild tenderness along the medial side and in the medial joint, and x-rays of the lumbar spine and knees were unremarkable. He diagnosed her with status post lumbar sprain with active left hip gluteus medius tendonitis, and status post medial meniscectomy of the left knee. Dr. Workmon found that Plaintiff would be capable of lifting 50 pounds occasionally and 25 pounds frequently, standing and walking for 6 hours in an 8-hour workday with normal rest periods; and sitting for 6 hours in an 8-hour workday with normal rest periods. (AR 137-139).

On May 2, 2005, a medical consultant completed the Residual Functional Capacity Assessment-Physical and opined that Plaintiff would be able to lift 50 pounds occasionally and 25 pounds frequently, stand or walk for a total of 6 hours in an 8-hour workday, sit for 6 hours in an 8-hour workday, and push or pull without limitations. He noted that Plaintiff had no instability, the straight leg-raising test was negative, and she had a full range of motion of the back. (AR 20). On September 12, 2005, Plaintiff saw Dr. Perelman and an updated MRI revealed an ongoing tear of the medial meniscus. Plaintiff underwent a second left knee arthroscopy on September 22, 2005. In a "Primary Treating Physician's Report ("PR-2") for the State of California, Division of Worker's Compensation, Dr. Perelman stated that Plaintiff's total temporary disability

---

[1] Dr. Workmon's original report states that the examination was conducted on April 5, 2004. However, the ALJ noted that because the report references a surgery performed in the fall of 2004, the correct year is probably 2005. The Court will assume the same.

1  ("TTD") would be eight to twelve weeks.  (AR 21).  During the following
2  months, Dr. Perelman's PR-2 forms noted that Plaintiff was benefiting from
3  physical therapy and that her condition was improving.  However, in reports as
4  late as April 11, 2006, Plaintiff's status was still TTD.  (AR 23).  Temporary
5  disability is construed as total for workers' compensation purposes, when it
6  produces complete, or substantially complete, cessation of earning power.
7  Hanna, California Law of Employee Injuries and Workers' Compensation, Vol.1,
8  § 7.01 [3] (2d ed. Rev. 1995).

   Plaintiff asserts that the ALJ erred in rejecting Dr. Perelman's worker's
10 compensation assessments.  A treating physician's opinion is entitled to greater
11 weight than that of an examining physician. Magallanes v. Bowen, 881 F.2d 747,
12 751 (9th Cir. 1989) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir.
13 1987)); 20 C.F.R. § 416.927(d)(1).  If the treating physician's opinion is
14 supported by medically acceptable clinical and laboratory diagnostic techniques
15 and is not inconsistent with other substantial evidence in the case, it will be given
16 controlling weight.  Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007).  Other
17 factors include the "length of the treatment relationship and the frequency of
18 examination by the treating physician."  Id.  Dr. Perelman's opinions are
19 supported by acceptable clinical and diagnostic techniques.  Furthermore, he had
20 an ongoing relationship with Plaintiff for over two years, as evidenced by over
21 15 visits.  (AR 135-246).

22   Defendant argues that the ALJ properly analyzed the medical record and
23 gave appropriate deference to Dr. Workmon's opinion.  Defendant supports this
24 assertion with Dr. Workmon's reports indicating a normal posture and gait,
25 negative testing, normal x-rays, and the conclusion that Plaintiff could perform
26 medium work.  (AR 136-138).  However, the objective medical evidence also
27 indicates that on the same visit to Dr. Workmon, plaintiff could squat only about
28 60% of normal and complained of pain in the left hip and left knee.  She also

1  complained of broad discomfort over the back and to the lateral side over the
2  muscles near the rim of the pelvis.
3        Plaintiff acknowledges that the x-rays were normal, but that the MRIs of
4  her left knee on August 18, 2004 and May 7, 2005 warranted surgeries in
5  November 2004 and September 2005. "Where evidence is susceptible to more
6  than one rational interpretation, the ALJ's decision should be upheld. However,
7  a reviewing court must consider the entire record as a whole and may not affirm
8  simply by isolating a specific quantum of supporting evidence." <u>Orn v. Astrue</u>,
9  495 F.3d at 631 (9th Cir. 2007) (citing <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th
10 Cir. 2005); <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 882 (9th Cir. 2006))
11 (internal quotation marks omitted).
12       Despite Dr. Perelman's extensive records over the course of two years, the
13 ALJ gave controlling weight to Dr. Workmon's one assessment, which occurred
14 prior to Plaintiff's second surgery. The ALJ concluded that the medical evidence
15 showed that plaintiff was status post left knee meniscal tear repair, and that
16 although the injury was "severe", it was not severe enough to qualify as a
17 disability impairment under 20 C.F.R., §§ 404.1520 and 416.920 (AR 26).
18       The ALJ failed to give substantial reasons for rejecting Dr. Perelman's
19 opinions. On his P-2 form dated April 11, 2006, Dr. Perelman stated that
20 "Although the injury has not stabilized, this injured worker will be left with a
21 permanent disability which will result in a work restriction." (AR 24). The ALJ
22 gave no weight to this statement, claiming that (1) it suggests Plaintiff does not
23 presently have a permanent disability; (2) it is overreaching because it opines on
24 Plaintiff's future condition; and (3) that the document itself does not specifically
25 identify Plaintiff. <u>Id.</u> These arguments form a weak foundation for rejection of
26 the findings of a treating physician. First, Dr. Perelman's reports repeatedly
27 assert that Plaintiff was TTD (AR 177, 181, 189, 191, 202, 208, 214, 223), which
28 implies that there was disability as of April 11, 2006. Second, Dr. Perelman's

1 prognosis in this report is not a substantial reason for giving less weight to Dr.
2 Perelman's opinions as a whole.  Third, the ALJ's doubt that Dr. Perelman's
3 papers were in reference to Plaintiff, and not some other patient, is unconvincing.
4      Although Dr. Perelman's reports repeatedly state that Plaintiff was TTD,
5 this is not sufficient to qualify her as disabled under the Act.  Plaintiff is entitled
6 to disability benefits only if she is unable to engage in any substantial gainful
7 activity for a continuous period of at least twelve months.  See 42 U.S.C. §
8 423(d)(1)(A); Matthews v. Shalala, 10 F.3d, 678, 680 (9th Cir. 1993).  Dr.
9 Perelman did not specifically state that he expected Plaintiff's disability to last
10 for twelve or more continuous months.  The record must be further developed
11 and Dr. Perelman should be consulted for his opinion as to whether Plaintiff was
12 unable to work at any job for twelve or more consecutive months since April
13 2004.

**Issue No. 2: The ALJ's Evaluation of Plaintiff's Subjective Complaints**

16      Where there is no evidence of malingering, the ALJ may reject the
17 claimant's testimony regarding the severity of her pain and symptoms only by
18 articulating clear and convincing reasons for doing so.  Smolen v. Chater, 80
19 F.3d 1273, 1285 (9th Cir. 1996).  Since the ALJ did not claim that Plaintiff was
20 malingering, she must specifically identify the testimony that is not credible and
21 point out evidence that undermines Plaintiff's complaints.
22      Plaintiff's past records include complaints of pain and weakness in her
23 back and left knee, for which she takes Ibuprofen, Darvocet, and Naprosyn.  (AL
24 256-259).  At the ALJ Hearing on April 5, 2006, Plaintiff testified that she was
25 still in pain, which limited her amount of walking and standing, and that her back
26 pain sometimes caused problems with sitting.  (AR 257-258).  The ALJ
27 concluded that Dr. Workmon's relatively normal findings conflicted with
28 Plaintiff's subjective complaints of pain.  (AR 23).

Plaintiff also stated that she could climb stairs to her apartment, walk to the grocery store, walk around the block, and do light housework. Based on the ability to perform these activities, the ALJ concluded that Plaintiff's testimony contradicted any claim that she is disabled. (AR 24). Defendant argues that these findings are clear and convincing reasons for rejecting Plaintiff's subjective testimony.

One problem with the ALJ's conclusion is that it fails to consider the level of pain or fatigue Plaintiff experiences while engaging in routine daily activities. For example, although Plaintiff testified that she could stand for 30-45 minutes to wash dishes, she also said that she had to take 10-15 minute breaks to sit. (AR 266). Indeed, the ability to perform various daily activities does not necessarily translate into the ability to perform these functions in a work setting on a daily basis. Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (citing Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001).[2]

## CONCLUSION

For the foregoing reasons, the decision of the Commissioner is reversed, and the matter is remanded for further proceedings, pursuant to Sentence 4 of 42

---

[2] The ALJ also erred in relying on the vocational expert's testimony in making a determination as to Plaintiff's RFC. At the hearing, vocational expert, June Hagen, opined that Plaintiff had the RFC to perform "light work", which includes Plaintiff's past relevant work as an usher/ticket taker (DOT sections 344.677-014 and 344.67-010). This conclusion should be subject to further analysis. An usher/ticket taker at a sports arena may require a higher level of activity than the same title at a smaller venue, such as a movie theatre. As an usher/ticket taker at Staples Center, Plaintiff was required to twist, turn, kneel, squat, grip, stand, climb stairs and ladders, and lift up to ten pounds. (AR 226). Therefore, the ALJ should have considered the physical requirements of the specific job of sports usher and compared those demands to Plaintiff's present abilities. If Plaintiff does not have the ability to be a sports usher/ticket taker, Defendant must show that there is other work in the economy that Plaintiff is able to perform.

U.S.C. § 405(g).

DATED: February 11, 2008

_____/S/_____
STEPHEN J. HILLMAN
UNITED STATES MAGISTRATE JUDGE